J. Andrew Coombs (SBN 123881)
andy@coombspc.com
Annie S. Wang (SBN 243027)
annie@coombspc.com
J. Andrew Coombs, A Prof. Corp.
517 East Wilson Ave., Suite 202
Glendale, California 91206
Telephone:  (818) 500-3200
Facsimile:  (818) 500-3201

Attorneys for Plaintiffs Sanrio, Inc.,
Disney Enterprises, Inc., Warner Bros.
Entertainment Inc. and DC Comics

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sanrio, Inc., Disney Enterprises, Inc., Warner Bros. Entertainment Inc. and DC Comics, <br><br> Plaintiffs, <br><br> v. <br><br> Lester Chan, an individual and d/b/a Ville de Paris and Does 1 – 10, inclusive, <br><br> Defendants. | Case No. CV12 - 01040 <br><br> COMPLAINT FOR COPYRIGHT INFRINGEMENT; TRADEMARK INFRINGEMENT; UNFAIR COMPETITION; TRADEMARK DILUTION; DECLARATORY RELIEF <br><br> DEMAND FOR A JURY TRIAL |

Plaintiffs Sanrio, Inc. ("Sanrio"), Disney Enterprises, Inc. ("Disney"), and Warner Bros. Entertainment Inc. ("Warner Bros.") and DC Comics (collectively "Plaintiffs") for their Complaint allege as follows:

**Allegations Common to All Claims for Relief**

**A.     Jurisdiction and Venue**

1.      The claims for trademark infringement, unfair competition and trademark dilution under the Lanham Trademark Act, as amended, 15 U.S.C., § 1051 et seq., allege the unauthorized use in interstate commerce of famous and distinctive marks, false designations of origin and trademark dilution.  The Court has jurisdiction over the subject matter of these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and § 1338. The cause of action for copyright infringement arises pursuant to 17 U.S.C. § 101, et seq.  The Court has jurisdiction over the subject matter

pursuant to 28 U.S.C. § 1331 and § 1338(a).  The remaining causes of action for unfair competition and trademark dilution under California state law and for a constructive trust arise under the laws of the State of California.  The Court has jurisdiction over these substantial and related claims pursuant to 28 U.S.C. § 1338 (b) and § 1367.

2.      Venue in the Northern District of California is proper pursuant to 28 U.S.C. § 1391(b), § 1392 and § 1400(a).

**B.      Introduction**

3.      This case concerns the concerted, systematic and wholesale theft of various world-famous intellectual properties owned by Plaintiffs.  Defendants are engaged in the manufacture, importation, distribution, promotion, sale and offer for sale of jewelry, charms, personal accessories, decals and other merchandise, which incorporate unauthorized likenesses of animated characters or other logos owned by Plaintiffs, including, but not necessarily limited to, Hello Kitty, Mickey Mouse, Minnie Mouse, Piglet, Tigger, Tweety and the Superman "S" in Shield Logo (collectively "Infringing Product").

**C.      Plaintiff Sanrio**

4.      Sanrio is a corporation, duly organized and existing under the laws of California, having its principal place of business in South San Francisco.  Plaintiff Sanrio is and, at all relevant times, has been, the exclusive U.S. licensee of Sanrio Company, Ltd., a Japan corporation ("Sanrio Co.").  Plaintiff Sanrio is a wholly-owned subsidiary of Sanrio Co.

5.      For more than forty years, Sanrio Co. has been engaged in the business of manufacturing, distributing and selling a wide range of products including, without limitation, character artwork created, developed and designed by Sanrio Co. for use by children and young adults.  Certain of the characters and designs have achieved such global fame and popularity that Sanrio Co. has produced and distributed television programming for children based on the character artwork.  One such television program is the animated television series entitled *Hello Kitty*.

6.      A significant source of revenue for Sanrio Co. is the merchandising and licensing of distinctive elements bearing character artwork, including Hello Kitty, Bad Badtz Maru, Chococat,

KeroKeroKeroppi, Landy, Little Twin Stars, Monkichi, My Melody, Patty and Jimmy, Pekkle, Picke Bicke, Pochacco, Tuxedo Sam, Winkipinki and Zashikbuta (hereinafter individually and collectively referred to as the "Sanrio Co. Characters").

7.     The revenue from products using the Sanrio Co. Characters sold in the United States is substantial. The appearance and other features of the Sanrio Co. Characters are inherently distinctive and serve to identify Sanrio as the source of products bearing the Sanrio Co. Characters. The design, configuration and distinctive features of the Sanrio Co. Characters and other Sanrio Co. copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as "Sanrio Co.'s Copyrighted Designs") are wholly original with Sanrio Co. and, as fixed in various tangible media, including, without limitation, merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§ 101 *et seq.* Sanrio Co. is the owner of Sanrio Co.'s Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*

8.     Sanrio Co. has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Sanrio Co.'s Copyrighted Designs, and Sanrio Co. owns one or more certificates of registration for works in which each of Sanrio Co.'s Copyrighted Designs appear. A representative list of copyright registrations for Sanrio Co.'s Copyrighted Designs is attached hereto as Exhibit A.

9.     Products featuring Sanrio Co.'s Copyrighted Designs manufactured, sold and distributed by Sanrio Co. or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws. Sanrio Co. and those acting under its authority have complied with their obligations under the copyright laws and Sanrio Co. has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of Sanrio Co.'s Copyrighted Designs.

10.    Sanrio Co. owns all right, title and interest in and to and holds exclusive right to develop, manufacture, market and sell products bearing the trademarks, trade names, service

marks, artwork, characters and other distinctive elements for and incorporating the Sanrio Co. Characters in the United States.

11.     Sanrio Co. is the owner of world famous registered marks which serve to distinguish Sanrio Co. products.  Some of those trademarks have been used continuously for over twenty-five years.  Each year, Sanrio Co. spends millions of dollars to develop and maintain the considerable good will it enjoys in its trademarks and in its reputation for high quality.  A representative list of trademark registrations for the Sanrio Co. Characters is attached hereto as Exhibit B (collectively "Sanrio Co.'s Trademarks").

12.     Sanrio Co.'s Trademarks are all valid, extant and in full force and effect.   Sanrio Co.'s Trademarks are all exclusively owned by Sanrio Co.  Sanrio Co. has continuously used each of Sanrio Co.'s Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

13.     As a result of advertising and sales, together with longstanding consumer acceptance, Sanrio Co.'s Trademarks identify Sanrio Co.'s products and authorized sales of these products.  Sanrio Co.'s Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world.  The Sanrio Co. Characters, Sanrio Co.'s Copyrighted Designs and Sanrio Co.'s Trademarks are collectively referred to herein as "Sanrio Co.'s Properties."

**D.      Plaintiff Disney**

14.     Disney is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California.

15.     Disney is a subsidiary of The Walt Disney Company (the "Company").  The Company, together with its subsidiaries, is a diversified worldwide entertainment company with operations in five business segments: Media Networks, Parks and Resorts, Studio Entertainment, Consumer Products and Interactive Media. The Media Networks segment is comprised of international and domestic cable networks and its broadcasting business. The Parks and Resorts segment owns and/or operates resorts and theme parks around the world including but not limited to the Walt Disney World Resort, the Disneyland Resort and the Disney Cruise Line. The

Company also licenses the operations of the Tokyo Disney Resort in Japan. The Imagineering unit designs and develops new theme park concepts and attractions as well as resort properties. The Studio Entertainment segment produces and acquires live-action and animated motion pictures, direct-to-video content, musical recordings and live stage plays. The Consumer Products segment engages with licensees, manufacturers, publishers and retailers throughout the world to design, develop, publish, promote and sell a wide variety of products based on existing and new characters and other Company intellectual property through its Merchandise Licensing, Publishing and Retail businesses. The Interactive Media Group creates and delivers branded entertainment and lifestyle content across interactive media platforms, primarily the production of multi-platform games for global distribution, and Online, which produces internet websites in the United States and internationally.

16.     A significant aspect of Disney's business is the merchandising and licensing of distinctive elements associated with its motion picture and television programs. The distinctive elements licensed and/or merchandised by Disney include, but are not limited to, the world-famous characters featured in numerous animated short films, feature length motion pictures and television programs produced over a period of more than seventy years, including, but not limited to, Mickey Mouse, Minnie Mouse, Piglet and Tigger (hereinafter individually and collectively referred to as the "Disney Characters").

17.     The revenue from products featuring the Disney Characters sold in the United States is substantial. The appearance and other features of the Disney Characters are inherently distinctive and serve to identify Disney and its licensees as the source of products bearing the Disney Characters. The design, configuration and distinctive features of the Disney Characters and other Disney copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as "Disney's Copyrighted Designs"), are wholly original with Disney and, as fixed in various tangible media, including merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., Sections 101, *et seq.* Disney is the owner of Disney's Copyrighted Designs and, as featured on in connection with various merchandise, constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*

18.     Disney, and its predecessors-in-interest, including Walter E. Disney, has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Disney's Copyrighted Designs, and Disney owns one or more certificates of registration for works in which each of Disney's Copyrighted Designs appear.  A representative list of copyright registrations for Disney's Copyrighted Designs is attached hereto as Exhibit C.

19.     Products featuring Disney's Copyrighted Designs, which are manufactured, sold and distributed by Disney or under its authority, have been manufactured, sold and distributed in conformity with the provisions of the copyright laws.  Disney and those acting under its authority have complied with their obligations under the copyright laws, and Disney, in its own right or as successor-in-interest, has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of Disney's Copyrighted Designs.

20.     Disney is the owner of world famous registered marks, which serve to distinguish Disney products ("Disney's Trademarks").  Some of those trademarks have been used continuously for over seventy years.  Each year Disney spends millions of dollars to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality.  A representative list of trademark registrations for Disney's Trademarks is attached hereto as Exhibit D.

21.     Disney's Trademarks are all valid, extant and in full force and effect.  Disney's Trademarks are all exclusively owned by Disney.  Disney has continuously used each of Disney's Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

22.     As a result of advertising and sales, together with longstanding consumer acceptance, Disney's Trademarks identify Disney's products and authorized sales of these products.  Disney's Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world.  The Disney Characters, Disney's Copyrighted Designs and Disney's Trademarks are collectively referred to herein as "Disney's Properties."

### E.   Plaintiff Warner Bros.

23.   Warner Bros. is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California. Warner Bros., or one of its wholly-owned subsidiaries, is engaged in a variety of businesses including, without limitation, the production, distribution and broadcast of filmed entertainment, including motion pictures and television programming.

24.   A significant aspect of Warner Bros.' business is the merchandising and licensing of distinctive trademarks and copyrights associated with its media product, specifically including the *Looney Tunes* animated shorts. The distinctive trademarks and copyrights licensed and/or merchandised by Warner Bros. include, but are not limited to, the world-famous characters featured in such programming and films, specifically including the character Tweety (hereinafter individually and collectively referred to as the "Warner Bros. Characters").

25.   The appearance and other features of the Warner Bros. Characters are inherently distinctive and serve to identify Warner Bros. and its licensees as the source of products bearing the Warner Bros. Characters. The design, configuration and distinctive features of the Warner Bros. Characters and other Warner Bros. copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as "Warner Bros.' Copyrighted Designs") are wholly original with Warner Bros. and, as fixed in various tangible media, including merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§ 101, et seq. Warner Bros. is the owner of Warner Bros.' Copyrighted Designs and, as featured on in connection with various merchandise, constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.

26.   Warner Bros. has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Warner Bros.' Copyrighted Designs, and Warner Bros. owns one or more certificates of registration for works in which each of Warner Bros.' Copyrighted Designs appear. A representative list of copyright registrations for Warner Bros.' Copyrighted Designs is attached hereto as Exhibit E.

27.     Warner Bros. and those acting under its authority have complied with their obligations under the copyright laws, and Warner Bros. has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of Warner Bros.' Copyrighted Designs.

28.     Warner Bros. is the owner of world famous registered marks which serve to distinguish Warner Bros. products. Each year Warner Bros. spends millions of dollars to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality. A representative list of trademark registrations for the Warner Bros. Characters is attached hereto as Exhibit F (collectively the "Warner Bros. Trademarks").

29.     The Warner Bros. Trademarks are all valid, extant and in full force and effect. Warner Bros. Trademarks are all exclusively owned by Warner Bros. Warner Bros. has continuously used each of the Warner Bros. Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

30.     As a result of advertising and sales, together with longstanding consumer acceptance, the Warner Bros. Trademarks identify Warner Bros.' products and authorized sales of these products. The Warner Bros. Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world. The Warner Bros. Characters, Copyrighted Designs and Trademarks are collectively referred to herein as the "Warner Bros. Properties."

F.     **Plaintiff DC Comics**

31.     DC Comics is a New York General Partnership consisting of E.C. Publications, Inc. and Warner Communications Inc., having its principal place of business in New York, New York.

32.     DC is engaged in the business of publishing comic magazines and is among the most well-known and successful publishers of comic magazines in the world. It has created and published highly successful and well-known characters including but not limited to BATMAN, SUPERMAN, WONDER WOMAN and THE FLASH (hereinafter individually and collectively referred to as the "DC Characters).

33.     A significant aspect of DC Comics' business is the merchandising and licensing of distinctive trademarks and copyrights associated with its highly successful and well-known DC Characters. Of these, two of the most successful characters have been Batman and Superman.

34.     Batman first appeared in the May 1939 issue of "Detective Comics." Numerous related characters, including "Robin," "The Riddler," "Two Face," "Catwoman," "The Penguin" and "The Joker" as well as other popular characters associated with Batman were soon introduced to the public. (Batman and the related characters are hereinafter collectively referred to as the "Batman Characters").

35.     Superman appeared at least as early as 1938. Numerous related characters, including "Clark Kent," "Lois Lane," and "Lex Luthor" as well as other popular characters associated with Superman were soon introduced to the public. (Superman and the related characters are hereinafter collectively referred to as the "Superman Characters").

36.     Since their introductions, the Batman Characters and Superman Characters have been featured in many formats, other than comic books, including movie serials, newspaper comic strips, radio shows, animated television series, live action television series, animated motion pictures, live action motion picture and theatrical presentations, among others. Television series featuring the Batman Characters and the Superman Characters have since been in continuous television syndication in the United States and abroad from 1966 through the present. These appearances have expanded the popularity of the Batman Characters and the Superman Characters beyond the comic book medium and market.

37.     The Batman Characters have also been featured in the 1989 motion picture entitled *BATMAN* (the "1989 Film"), the 1992 motion picture entitled *BATMAN RETURNS* (the "1992 Film"), the 1995 motion picture entitled *BATMAN FOREVER* (the "1995 Film"), the 1997 motion picture entitled *BATMAN & ROBIN* (the "1997 Film"), the 2005 motion picture entitled *BATMAN BEGINS* (the "2005 Film"), and the most recent motion picture entitled *THE DARK KNIGHT* (the "2008 Film").

38.     The 1989 Film generated over $251 million dollars in domestic box office receipts. The 1992 Film generated over $162 million dollars in domestic box office receipts. The 1995 Film

generated over $184 million dollars in domestic box office receipts. The 1997 Film generated over $107 million dollars in domestic box office receipts. The 2005 Film generated over $205 million dollars in domestic box office receipts. And the 2008 Film generated over $533 million dollars in domestic box office receipts. The *BATMAN* motion pictures have resulted in domestic gross box office receipts in over a billion dollars, not to mention additional revenues from syndication rights and home video distribution. The *BATMAN* motion pictures have proven to be among the most successful licensing and merchandising ventures of all time, with gross retail sales of associated licensed merchandise exceeding $1,000,000,000.

39.     The Superman Characters have also appeared in numerous theatrical motion pictures since their introduction. The most recent motion picture featuring the Superman Characters, *SUPERMAN RETURNS*, was released on June 28, 2006, and has generated more than $200 million dollars in domestic box office receipts and more than $190 million dollars in international box office receipts. The Superman Characters have also been featured in numerous other theatrical motion pictures, including a series of four motion pictures starring Christopher Reeve. Such motion pictures include *SUPERMAN THE MOVIE, SUPERMAN II, SUPERMAN III and SUPERMAN IV: THE QUEST FOR PEACE*, that collectively generated over $750 million dollars in worldwide box office receipts.

40.     Revenues generated from products and services using the DC Characters sold in the United States are substantial. The appearance and other features of the DC Characters are inherently distinctive and serve to identify DC Comics and its licensees as the source of products bearing the DC Characters. The design, configuration and distinctive features of the DC Characters and other DC Comics' copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "DC Comics' Copyrighted Designs") are wholly original with DC Comics and, as fixed in various tangible media, including, without limitation, merchandise, are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§ 101, et seq. DC Comics is the owner of the DC Copyrighted Designs and, as featured on in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq.

41.     DC Comics has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to the DC Comics' Copyrighted Designs, and DC Comics owns one or more certificates of registration for works in which each of the DC Comics' Copyrighted Designs appear.  A representative list of copyright registrations for the DC Comics' Copyrighted Designs is attached as Exhibit G.

42.     Products featuring the DC Comics' Copyrighted Designs manufactured, sold and distributed by DC Comics or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws.  DC Comics and those acting under its authority have complied with their obligations under the copyright laws and DC Comics has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of the DC Comics' Copyrighted Designs.

43.     DC Comics owns all right, title and interest in and to and holds exclusive right to develop, manufacture, market and sell product bearing the trademarks, trade names, service marks, artwork, characters and other distinctive elements for and incorporating the DC Characters.

44.     DC Comics is the owner of world famous registered marks which serve to distinguish DC products.  Each year DC Comics spends millions of dollars to develop and maintain the considerable good will it enjoys in its trademarks and in its reputation for high quality.  A representative list of trademark registrations for the DC Characters is attached as Exhibit H (collectively the "DC Comics' Trademarks"), including, but not limited to, the trademark registration of the Superman "S" in Shield Logo and the Batman "Bat Emblem" devices are depicted below:




45.     The DC Comics' Trademarks are all valid, extant and in full force and effect.  The DC Comics' Trademarks are all exclusively owned by DC Comics.  DC Comics has continuously

used each of the DC Comics Trademarks from the registration date, or earlier, until the present and at all times relevant to the claims alleged in this Complaint.

46.     DC has granted and transferred to its related companies, Warner Bros. Consumer Products Inc., Warner Bros. Home Entertainment and WB Studio Enterprises Inc., subsidiaries of Warner Bros., the right to supervise in the United States the merchandising and licensing of the copyrighted elements, trademarks, trade names and service marks incorporated in or associated with the DC Characters.  Currently, Plaintiffs have numerous active license agreements in the United States.  These agreements provide for the authorized use of the DC Characters on products and in connection with services, including decals, watches, key chains and other personal accessories, among others.

47.     As a result of advertising and sales, together with longstanding consumer acceptance, the DC Comics' Trademarks identify DC Comics' products and authorized sales of these products.  The DC Comics' Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world.  The DC Comics' Copyrighted Designs and the DC Comics' Trademarks are collectively referred to herein as the "DC Comics' Properties."

48.     Sanrio Co.'s Copyrighted Designs, Disney's Copyrighted Designs, Warner Bros.' Copyrighted Designs and DC's Copyrighted Designs are collectively referred to herein as "Plaintiffs' Copyrighted Designs."  Sanrio Co.'s Trademarks, Disney's Trademarks, the Warner Bros. Trademarks and DC's Trademarks are collectively referred to herein as "Plaintiffs' Trademarks."  Plaintiffs' Copyrighted Designs and Plaintiffs' Trademarks are collectively referred to herein as "Plaintiffs' Properties."

G.     **Defendants**

49.     Defendant Lester Chan ("Chan") is an individual and doing business as Ville de Paris, and upon information and belief, a resident of the city of Cupertino, County of Santa Clara, and State of California.  Plaintiffs are informed and believe, and upon that basis allege, that Chan does business as Ville de Paris, with retail locations in the cities of San Jose and Pleasanton, Counties of Santa Clara and Alameda, State of California.  Plaintiffs are further informed and

believe, and based thereon allege, that Chan had the right and ability to supervise or control the infringing activity alleged herein and that he had a direct financial interest in such activity. In addition or alternatively, Chan had knowledge or reason to know of the infringing activity and took actions that contributed to such activity.

50.    Upon information and belief, Does 1 – 10 are either entities or individuals who are residents of or present in this judicial district, and are subject to the jurisdiction of this Court. Upon information and belief, Does 1 – 10 are principals or supervisory employees of the named defendants, suppliers of the named defendants or other entities or individuals who are manufacturing, distributing, selling and/or offering for sale merchandise in this judicial district which infringes some or all of Plaintiffs' Properties. The identities of the various Does are unknown to Plaintiffs at this time. The Complaint will be amended to include the names of such individuals when identified. The named defendants and Does 1 – 10 are collectively referred to herein as "Defendants."

**H.    Defendants' Infringing Activities**

51.    Upon information and belief, long after Plaintiffs' adoption and use of Plaintiffs' Properties on a diverse range of goods, and after Plaintiffs obtained the copyright and trademark registrations alleged above, Defendants adopted and used substantially identical likenesses of Plaintiffs' Properties on Infringing Product, without Plaintiffs' consent, by manufacturing, importing, advertising, displaying, distributing, selling and/or offering to sell the Infringing Product. Defendants have caused the Infringing Product to enter into commerce and to be transported or used in commerce. Defendants are not licensed by Plaintiffs, or each of them, and at all relevant times were not authorized by Plaintiffs or any authorized agent of Plaintiffs to manufacture, import, distribute, sell and/or offer for sale the Infringing Product. Defendants are currently engaged in such uses and, unless enjoined by this Court, will continue such unauthorized uses.

52.    By engaging in this conduct, Defendants have acted in willful disregard of laws protecting Plaintiffs' goodwill and related proprietary rights and have confused and deceived, or threaten to confuse and deceive, the consuming public concerning the source and sponsorship of

the products.  By their wrongful conduct, Defendants have traded upon and diminished Plaintiffs' goodwill.

## FIRST CLAIM FOR RELIEF

### (For Copyright Infringement)

53.     Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 52 inclusive, as though set forth herein in full.

54.     Plaintiffs are informed and believe, and upon that basis allege, that the Defendants have each obtained gains, profits and advantages as a result of their infringing acts in amounts within the jurisdiction of the Court.

55.     Plaintiffs are informed and believe, and upon that basis allege, that they have suffered and continue to suffer direct and actual damages as result of Defendants' infringing conduct as alleged herein, in amounts within the jurisdiction of this Court.  In order to determine the full extent of such damages, including such profits as may be recoverable under 17 U.S.C. § 504, Plaintiffs will require an accounting from each Defendant of all monies generated from the manufacture, importation, distribution and/or sale of the Infringing Product as alleged herein.  In the alternative, Plaintiffs may elect to recover, for each of its respective copyrighted works infringed, statutory damages pursuant to 17 U.S.C. § 504(c).

56.     Plaintiffs have no other adequate remedy at law and have suffered and continue to suffer irreparable harm and damage as a result of the above-described acts.  Plaintiffs are informed and believe, and upon that basis allege, that, unless enjoined by the Court, the unlawful infringement by Defendants of Plaintiffs' Properties will continue with irreparable harm and damage to Plaintiffs.  Accordingly, Plaintiffs seeks and requests permanent injunctive relief pursuant to 17 U.S.C § 502.

57.     By reason of the foregoing, Plaintiffs have incurred and will continue to incur attorneys' fees and other costs in connection with the prosecution of their claims herein, which attorneys' fees and costs Plaintiffs are entitled to recover from the Defendants, and each of them, pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF

### (For Trademark Infringement)

58.     Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 57, inclusive, as though set forth herein in full.

59.     Defendants' manufacture, importation, advertisement, display, promotion, marketing, distribution, sale and/or offer for sale of the Infringing Product is likely to cause confusion or to cause mistake or to deceive the relevant public and trade regarding the affiliation, sponsorship, endorsement or approval of the Infringing Product by Plaintiffs.  Such confusion, mistake and deception is aggravated by the confusing similarity between Plaintiffs' Properties and the use of substantially identical likenesses on the Infringing Product in the same type of goods made, imported and sold by or under authority of Plaintiffs.

60.     Plaintiffs are informed and believe, and upon that basis allege, that Defendants, and each of them, acted with knowledge of the federally registered trademarks alleged herein and of the valuable goodwill Plaintiffs enjoy in connection therewith, with intent to confuse, mislead and deceive the public into believing that the Infringing Product was made, imported and sold by Plaintiffs, and each of them, or are in some other manner, approved or endorsed by Plaintiffs, and each of them.

61.     Plaintiffs have suffered and continue to suffer irreparable harm and damage as a result of Defendants' acts of trademark infringement in amounts thus far not determined but within the jurisdiction of this Court, which amounts should each be trebled pursuant to 15 U.S.C. § 1117. In order to determine the full extent of such damages, including such profits as may be recoverable under 15 U.S.C. § 1117, Plaintiffs will require an accounting from each Defendant of all monies generated from the manufacture, importation, distribution and/or sale of the Infringing Product as alleged herein.  In the alternative, Plaintiffs may elect to recover statutory damages pursuant to 15 U.S.C. § 1117(c).

62.     Plaintiffs have no other adequate remedy at law and have suffered and continue to suffer irreparable harm and damage as a result of the above-described acts of infringement. Plaintiffs are informed and believe, and upon that basis allege, that, unless enjoined by the Court,

1    the unlawful infringement will continue with irreparable harm and damage to Plaintiffs.

2    Accordingly, Plaintiffs seek and request preliminary and permanent injunctive relief pursuant to 15

3    U.S.C § 1116.

4          63.    By reason of the foregoing, Plaintiffs have incurred and will continue to incur

5    attorneys' fees and other costs in connection with the prosecution of their claims herein, which

6    attorneys' fees and costs Plaintiffs are entitled to recover from Defendants, and each of them,

7    pursuant to 15 U.S.C. § 1117(c).

8                        **THIRD CLAIM FOR RELIEF**

9                          **(For Unfair Competition)**

10         64.    Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through

11   63, inclusive, as though set forth herein in full.

12         65.    Plaintiffs own all rights, title and interest in and to the trademarks, trade names,

13   service marks, artwork, characters and other distinctive elements for and incorporating Plaintiffs'

14   Properties.

15         66.    Plaintiffs' Properties have each acquired a secondary and distinctive meaning

16   among the public, which has come to identify Plaintiffs through various media, including films,

17   books, television, theme parks, magazines and other sources, and through the distribution and sale

18   of authorized merchandise, and the distinctive features of each, as designating products associated

19   with Plaintiffs, and each of them.  As a result of the extensive advertising, media exposure, sales

20   and public recognition of Plaintiffs' Properties, combined with the positive experiences of the

21   public in its relationship with Plaintiffs, and each of them, Plaintiffs' Properties are each symbolic

22   of Plaintiffs, and each of them, and representative of the images which the public has of Plaintiffs.

23         67.    Plaintiffs are informed and believe, and upon that basis allege, that Defendants, and

24   each of them, have, without permission, authority or license from Plaintiffs or their respective

25   licensees, affixed, applied and/or used in connection with the manufacture, importation,

26   advertisement, display, promotion, marketing, distribution, sale and/or offer for sale, false

27   descriptions and representations, including words or other symbols which tend falsely to describe

28   or represent such goods as Plaintiffs and/or affiliated with Plaintiffs, and have caused the entry of

such goods into interstate commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Plaintiffs. Defendants, and each of them, by misappropriating and using one or more of Plaintiffs' Properties, have misrepresented and falsely described to the general public the origin, source, association, affiliation or sponsorship of their goods so as to create the likelihood of confusion by the ultimate purchaser as to both the source and sponsorship of said goods.

68.     Plaintiffs are informed and believe, and upon that basis allege, that the Infringing Product being manufactured, imported, advertised, marketed, displayed, distributed, sold and/or offered for sale by Defendants, and each of them, are of inferior quality and that the sale and/or offer for sale thereof will be damaging to and dilute the goodwill and reputations of Plaintiffs.

69.     Defendants' acts and conduct, as alleged herein, including, without limitation, the Defendants' duplication and imitation of Plaintiffs' Properties, are business practices likely to deceive or confuse the purchasing public and trade upon Plaintiffs' reputations, both as to the source, origin, sponsorship and approval of the goods provided and as to the affiliation, connection or association of Defendants, and each of them, with Plaintiffs and constitute acts of unfair competition, false designation of origin and false representation of affiliation, all in violation of 15 U.S.C. § 1125(a). Plaintiffs are informed and believe, and upon that basis allege, that each of Defendants' respective acts of reputation appropriation and unfair competition was willful.

70.     Plaintiffs have no adequate remedy at law and have suffered and continue to suffer irreparable harm and damage as a result of Defendants' respective acts of unfair competition in amounts thus far not determined but within the jurisdiction of this Court, which amounts should each be trebled pursuant to 15 U.S.C. § 1117.

71.     Plaintiffs are informed and believe, and upon that basis allege, that unless enjoined by the Court the confusion and deception alleged above and the likelihood thereof will continue with irreparable harm and damage to Plaintiffs. Accordingly, Plaintiffs seek and request preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

72.     Plaintiffs are informed and believe, and upon that basis allege, that Defendants have each obtained gains, profits and advantages as a result of their wrongful acts of unfair competition

in amounts not thus far determined but within the jurisdiction of this Court, which amounts should each be trebled, pursuant to 15 U.S.C. § 1117.

73.     In order to determine the full extent of such damages, including such profits as may be recoverable, Plaintiffs require an accounting from each Defendant of all monies generated from the manufacture, importation, distribution and/or sale of the Infringing Product.

74.     By reason of the foregoing, Plaintiffs have incurred and will continue to incur attorneys' fees and other costs in connection with the prosecution of their claims herein, which attorneys' fees and costs Plaintiffs are entitled to recover from the Defendants, and each of them, pursuant to 15 U.S.C. § 1117.

## FOURTH CLAIM FOR RELIEF

### (For Trademark Dilution)

75.     Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 74, inclusive, as though set forth in full herein.

76.     The extensive advertising, media exposure, sales and public recognition of Plaintiffs' Properties, combined with the positive experiences of the public in its relationship with Plaintiffs, have made Plaintiffs' Properties each famous and distinctive marks that are symbolic of Plaintiffs and representative of the image the public has of Plaintiffs.

77.     Plaintiffs' Properties are extraordinarily famous and well known throughout the United States and elsewhere, having been used extensively by Plaintiffs.  By reason of Plaintiffs' extensive use of Plaintiffs' Properties, each has become highly distinctive of Plaintiffs' goods and services and is uniquely and exclusively associated with Plaintiffs.  Plaintiffs' Properties are famous marks within the purview of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

78.     Defendants' acts and conduct, as alleged herein, including Defendants' use of Plaintiffs' Trademarks on and in connection with the manufacture, importation, advertisement, display, distribution, sale and/or offer for sale of the Infringing Product are commercial business practices which trade on Plaintiffs' reputations and cause dilution of one or more of each of the famous, distinctive and pre-existing Trademarks, by lessening the capacity of these marks to exclusively identify and to distinguish Plaintiffs and their goods and services and constitute

dilution, all in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Plaintiffs are informed and believe, and upon that basis allege, that each of Defendants' acts of trademark dilution and reputational appropriation was willful and that each Defendant willfully intended to reap the benefit of Plaintiffs' goodwill, trade upon Plaintiffs' reputations and/or dilute the distinctiveness of one or more of Plaintiffs' famous and distinctive trademarks.

79.     Plaintiffs are informed and believe, and upon that basis allege, that unless enjoined by the Court, Defendants' unlawful and unauthorized acts in violation of Section 43(c) of the Lanham Act will continue to cause dilution of one or more of Plaintiffs' Properties with the corresponding irreparable harm and damage to Plaintiffs. Accordingly, Plaintiffs seek preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

80.     Plaintiffs have no adequate remedy at law and have suffered and continue to suffer irreparable harm and damage as a result of Defendants' acts of trademark dilution in amounts thus far not determined, but within the jurisdiction of this Court, which amounts should be trebled pursuant to 15 U.S.C. § 1116.

81.     Plaintiffs are informed and believe, and upon that basis allege, that Defendants have each obtained gains, profits and advantages as a result of their wrongful acts of trademark dilution in amounts thus far not determined but within the jurisdiction of this Court, which amounts should be trebled pursuant to 15 U.S.C. § 1117.

82.     In order to determine the full extent of such damages, including such profits as may be recoverable, Plaintiffs will require an accounting from each Defendant of all monies generated from the manufacture, importation, distribution and/or sale of the diluting items alleged herein.

83.     By reason of the foregoing, Plaintiffs have incurred and will continue to incur attorneys' fees and other costs in connection with the prosecution of their claims herein, which attorneys' fees and costs Plaintiffs are entitled to recover from Defendants, and each of them, pursuant to 15 U.S.C. § 1117.

## FIFTH CLAIM FOR RELIEF

### (For State Law Unfair Competition)

84.     Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 though 83, inclusive, as though set forth herein in full.

85.     As alleged above, each of Plaintiffs' Properties has acquired secondary meaning indicative of origin, relationship, sponsorship and/or association with Plaintiffs.  The purchasing public is likely to attribute to Plaintiffs the use by Defendants and/or their customers of one or more of Plaintiffs' Properties, as a source of origin, authorization and/or sponsorship for Defendants and/or their customers' goods and therefore to purchase such goods based upon that erroneous belief.

86.     Plaintiffs are informed and believe, and upon that basis allege, that Defendants, and each of them, have intentionally appropriated one or more of Plaintiffs' Properties with the intent of causing confusion, mistake and deception as to the source of their and/or their third-party wholesale customers' goods and with the intent to palm off such goods as those of Plaintiffs, and, as such, Defendants have each committed trademark infringement, misleading advertising and unfair competition, all in violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, *et seq*.

87.     Plaintiffs have no adequate remedy at law and have suffered and continue to suffer irreparable harm and damage as a result of each of Defendants' acts in an amount thus far not determined but within the jurisdiction of this Court.

88.     Plaintiffs are informed and believe, and upon that basis allege, that unless enjoined by the Court, the confusion and deception alleged herein and the likelihood thereof will continue with irreparable harm and damage to Plaintiffs.

89.     Plaintiffs are informed and believe, and upon that basis allege, that Defendants have each unlawfully and wrongfully derived and will continue to derive income, gains, profits and advantages as a result of their wrongful acts of unfair competition, in amounts thus far not determined but within the jurisdiction of this Court.  Plaintiffs are informed and believe, and upon

that basis allege, that they have lost and will continue to lose profits and goodwill as a result of Defendants' conduct.

90.     By reason of the foregoing acts of unfair competition, Plaintiffs are entitled to restitution from each Defendant of all income, gains, profits and advantages resulting from their wrongful conduct in amounts to be determined according to proof at trial.

91.     In order to determine the full extent of such damages, including such profits as may be recoverable, Plaintiffs will require an accounting from each Defendant of all monies generated from the manufacture, importation, distribution and/or sale of the Infringing Product.

92.     Plaintiffs are informed and believe, and upon that basis allege, that Defendants, and each of them, committed the acts alleged herein intentionally, fraudulently, maliciously, willfully, wantonly and oppressively, with intent to injure Plaintiffs in its business and with conscious disregard for Plaintiffs' rights, thereby justifying awards of punitive and exemplary damages against each Defendant in amounts sufficient to punish each Defendant and to set an example for others.

## SIXTH CLAIM FOR RELIEF

### (State Law Trademark Dilution)

93.     Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 92, inclusive, as though set forth herein in full.

94.     Plaintiffs have used Plaintiffs' Properties to identify themselves and their goods and services, respectively. Defendants' use of Plaintiffs' Properties to identify themselves and their products has diluted and will continue to dilute the distinctive quality of Plaintiffs' Properties in violation of § 14245, *et seq.* of the California Business and Professions Code.

95.     Defendants' acts as alleged herein have damaged and will continue to irreparably damage Plaintiffs. Plaintiffs have no adequate remedy at law for such wrongs and injuries. The damage to Plaintiffs includes harm to their goodwill and reputations that money cannot adequately compensate. Plaintiffs therefore are entitled to a preliminary and permanent injunction enjoining Defendants' commercial use of Plaintiffs' Properties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand:

A.      That Defendants, their agents, servants, employees, representatives, successor and assigns, and all persons, firms, corporations or other entities in active concert or participation with any of said Defendants, be immediately and permanently enjoined from:

1.      Directly or indirectly infringing Plaintiffs' Properties in any manner, including generally, but not limited to, manufacture, importation, distribution, advertising, selling and/or offering for sale any merchandise which infringes the said Plaintiffs' Properties, and, specifically:

2.      Importing, manufacturing, distributing, advertising, selling and/or offering for sale the Infringing Product or any other unauthorized products which picture, reproduce, copy or use the likenesses of or bear a confusing and/or substantial similarity to any of Plaintiffs' Properties;

3.      Importing, manufacturing, distributing, advertising, selling and/or offering for sale in connection thereto any unauthorized promotional materials, labels, packaging or containers which picture, reproduce, copy or use the likenesses of or bear a confusing and/or substantial similarity to any of Plaintiffs' Properties;

4.      Engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead or deceive purchasers, Defendants' customers and/or members of the public to believe the actions of Defendants, the products sold by Defendants or Defendants themselves are connected with Plaintiffs, are sponsored, approved or licensed by Plaintiffs, or are in some way affiliated with Plaintiffs;

5.      Affixing, applying, annexing or using in connection with the importation, manufacture, distribution, advertising, sale and/or offer for sale or other use of any goods or services, a false description or representation, including words or other symbols, tending to falsely describe or represent such goods as being those of Plaintiffs;

6.      Otherwise competing unfairly with Plaintiffs in any manner;

7.      Destroying or otherwise disposing of

a.      Merchandise falsely bearing Plaintiffs' Properties;

b.      Any other products which picture, reproduce, copy or use the likenesses of or bear a substantial similarity to any of Plaintiffs' Properties;

c.      Any labels, packages, wrappers, containers or any other unauthorized promotion or advertising material item which reproduces, copies, counterfeits, imitates or bears any of Plaintiffs' Properties;

d.      Any molds, screens, patterns, plates, negatives or other elements used for making or manufacturing products bearing Plaintiffs' Properties;

e.      Any sales and supply or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogs and all other business records, believed to concern the manufacture, purchase, advertising, sale or offering for sale of the Infringing Product;

B.      That Plaintiffs and its designees are authorized to seize the following items, which are in Defendants' possession, custody or control:

1.      All unauthorized products bearing Plaintiffs' Properties, or likenesses thereof;

2.      Any other unauthorized products which reproduce, copy, counterfeit, imitate or bear any of Plaintiffs' Properties or which picture, reproduce, copy or use the likeness of or bear a substantial similarity to Plaintiffs' Properties;

3.      Any labels, packages, wrappers, containers and any other unauthorized promotional or advertising material which reproduce, copy, counterfeit, imitate or bear any of Plaintiffs' Properties or which picture, reproduce, copy or use the likeness of or bear a substantial similarity to Plaintiffs' Properties;

4.      Any molds, screens, patterns, plates, negatives, machinery or equipment used for making or manufacturing the Infringing Product or unauthorized items which bear Plaintiffs' Properties or which bear a substantial similarity to any of Plaintiffs' Properties.

C.   That those Defendants infringing upon Plaintiffs' Properties be required to pay actual damages increased to the maximum extent permitted by law and/or statutory damages at Plaintiffs' election;

D.   That actual damages be trebled pursuant to 15 U.S.C. § 1117;

E.   That Defendants account for and pay over to Plaintiffs all damages sustained by Plaintiffs and profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that those profits be increased as provided by law;

F.   That Plaintiffs recover from Defendants its costs of this action and reasonable attorneys' fees; and

G.   That Plaintiffs have all other and further relief as the Court may deem just and proper under the circumstances.

Dated: February 16, 2012

J. Andrew Coombs, A Professional Corp.

By: _____

J. Andrew Coombs
Annie S. Wang
Attorneys for Plaintiffs Sanrio, Inc., Disney
Enterprises, Inc., Warner Bros. Entertainment Inc. and
DC Comics

1

## DEMAND FOR JURY TRIAL

2     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs Sanrio, Inc., Disney

3    Enterprises, Inc., Warner Bros. Entertainment Inc. and DC Comics hereby demand a trial by jury of

4    all issues so triable.

5

6    DATED: February 26, 2012                    J. Andrew Coombs, A Professional Corp.

7

8                                                By:_____

9                                                     J. Andrew Coombs
                                                     Annie S. Wang
10                                               Attorneys for Plaintiffs Sanrio, Inc., Disney
                                                 Enterprises, Inc., Warner Bros. Entertainment Inc. and
                                                 DC Comics

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28